ORIGINAL

1 | MARC J. FAGEL (Cal. Bar No. 154425)
  | ROBERT L. TASHJIAN (Cal. Bar No. 191007)
2 |   tashjianr@sec.gov
  | CATHERINE D. WHITING (Cal. Bar No. 190436)
3 |   whitingc@sec.gov

4

5 | Attorneys for Plaintiff
  | SECURITIES AND EXCHANGE COMMISSION
  | 44 Montgomery Street, Suite 2600
6 | San Francisco, California 94104
  | Telephone: (415) 705-2500
7 | Facsimile: (415) 705-2501

8

9

10

11

12

13

14

                    UNITED STATES DISTRICT COURT

                  NORTHERN DISTRICT OF CALIFORNIA

                        SAN JOSE DIVISION

                                                CV 08     2367

| SECURITIES AND EXCHANGE COMMISSION, | Case No. _____ |
|---|---|
| Plaintiff, | |
| v. | COMPLAINT |
| MARVELL TECHNOLOGY GROUP, LTD. and WEILI DAI, | |
| Defendants. | |

21 | Plaintiff Securities and Exchange Commission (the "Commission") alleges:

22 | **SUMMARY OF THE ACTION**

23 | 1.    From at least early 2001 through 2004, Marvell Technology Group, Ltd. ("Marvell" or

24 | the "Company"), a Santa Clara semiconductor company, engaged in a scheme to illegally backdate

25 | stock options granted to Marvell employees and executives, concealing hundreds of millions of

26 | dollars in expenses from the Company's shareholders. Company co-founder and Chief Operating

27 | Officer Weili Dai routinely used hindsight to pick dates with low stock prices for purported stock

28

                              1

1  option grants, and signed false documents that made it appear as if the options had been granted on

2  the earlier dates.

3      2.      Under well-settled accounting principles in effect during the relevant period, Marvell

4  was required to record an expense in its financial statements for any options granted to employees

5  with an exercise price below the current market price ("in-the-money"), but did not need to record an

6  expense for options granted with an exercise price equal to the current market price ("at-the-money").

7  In order to provide employees and officers with valuable "in-the-money" options without recording

8  an expense, Marvell routinely backdated stock option grants to make it appear as though the options

9  had been granted "at-the-money" on an earlier date.

10     3.      Dai, acting as Marvell's "Stock Option Committee," engaged in a routine practice of

11  reviewing a list of Marvell's historical stock prices and picking the date with the lowest (or one of the

12  lowest) stock prices since the last grant date. This date, picked with hindsight by Dai, would then be

13  communicated to Marvell personnel as the date on which the Stock Option Committee had

14  purportedly met and authorized the option grant. To make it appear that Marvell had actually granted

15  the options on that date, Dai signed falsified minutes attesting to a meeting of the Committee on that

16  earlier date.

17     4.      As a result of the backdating scheme, Marvell failed to record compensation expenses

18  for those options. From its fiscal years 2000 through 2006, Marvell overstated its income by $362

19  million and falsely represented in Commission filings and shareholder communications that it granted

20  options "at-the-money" and thus incurred no expenses for options granted below fair market value.

21     5.      Marvell and Dai violated the antifraud, internal controls, books and records, and

22  financial reporting provisions of the federal securities laws. The Commission seeks an order

23  enjoining Marvell and Dai from future violations of the securities laws, requiring Marvell and Dai to

24  pay civil monetary penalties, barring Dai from serving as an officer or director of a public company,

25  and providing other appropriate relief.

26

27

28

SEC v. MARVELL, et al.
COMPLAINT

1

**JURISDICTION, VENUE, AND INTRADISTRICT ASSIGMENT**

2    6.    The Commission brings this action pursuant to Sections 20(b) and 20(d) of the

3 Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77t(b) and 77t(d)] and Sections 21(d) and

4 21(e) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§ 78u(d) and 78u(e)].

5    7.    This Court has jurisdiction over this action pursuant to Sections 20(b) and 22(a) of the

6 Securities Act [15 U.S.C. §§ 77t(b) and 77v(a)] and Sections 21(d), 21(e), and 27 of the Exchange

7 Act [15 U.S.C. §§ 78u(d), 78u(e), and 78aa].

8    8.    Venue is proper in this district pursuant to Section 22 of the Securities Act [15 U.S.C.

9 § 77v] and Section 27 of the Exchange Act [15 U.S.C. § 78aa]. Marvell's principal place of business

10 is in the Northern District of California. Dai resides in the Northern District of California. Acts or

11 transactions constituting violations of the federal securities laws occurred in this district.

12    9.    Marvell and Dai, directly or indirectly, made use of the means or instrumentalities of

13 interstate commerce, or of the mails, or of the facilities of a national securities exchange in

14 connection with the transaction, acts, practices, and courses of business alleged herein.

15    10.    Assignment to the San Jose Division is appropriate pursuant to Civil Local Rules 3-

16 2(c) and 3-2(d) because acts and omissions giving rise to the Commission's claims occurred, among

17 other places in this district, in Santa Clara County.

18    **DEFENDANTS**

19    11.    Marvell is incorporated in Hamilton, Bermuda and its primary operating subsidiary,

20 Marvell Semiconductor, Inc., is headquartered in Santa Clara, California and makes integrated

21 circuits. At all relevant times, Marvell's common stock was registered with the Commission pursuant

22 to Section 12(g) of the Exchange Act and traded on the Nasdaq Global Market under the symbol

23 "MRVL." With the exception of fiscal year 2001, Marvell used a fiscal year that ended on the

24 Saturday nearest January 31.

25    12.    Weili Dai, age 46, resides in Los Altos Hills, California. Dai co-founded Marvell in

26 1995 along with her husband and current CEO and Chairman of the Board, Dr. Sehat Sutardja, and

27 Dr. Pantas Sutardja, Dai's brother-in-law. Dai served on Marvell's Board of Directors from 1995

28

SEC v. MARVELL, et al.
COMPLAINT

1   through May 2007.  In addition, she has served as Secretary, Executive Vice President from 1999 to

2   April 2006, and, beginning in 2006, Chief Operating Officer.  In May 2007, she was asked to resign

3   from the Board and from her senior executive positions.  Dai assumed the position of Marvell's

4   Director of Strategic Marketing and Business Development, and remains in that position as of April

5   2008.  During the Commission's investigation, Dai asserted her Fifth Amendment right against self-

6   incrimination and accordingly declined to answer any of the Commission staff's substantive

7   questions.

8                                    **FACTUAL ALLEGATIONS**

9       **A.       Marvell Used Stock Options To Recruit And Retain Employees.**

10      13.      Throughout the relevant period, Marvell used employee stock options as a form of

11  compensation to recruit, reward, and retain key employees.  Each option gave the grantee the right to

12  buy Marvell common stock from the Company at a set price, called the "exercise" or "strike" price,

13  on a future date after the option vested.  The option was "at-the-money" when granted if the closing

14  price of Marvell's common stock on the date of the grant and the exercise price were the same.  The

15  option was "in-the-money" when granted if the closing price of Marvell common stock on the date of

16  the grant exceeded the option's exercise price.

17      14.      The Company described to its shareholders the benefits of stock options in its 2004

18  proxy statement:  "Stock option grants are intended to focus the attention of the recipient on the

19  Company's long-term performance, which the Company believes results in improved shareholder

20  value, and to retain the services of the executive officers and employees in a competitive job market

21  by providing significant long-term earnings potential."  Dai signed the 2004 proxy statement as

22  Marvell's Secretary.

23      **B.       Marvell Told Shareholders It Granted Stock Options At Fair Market Value.**

24      15.      Marvell's stock option plan required the exercise price of stock options to be "at least"

25  the closing price of the Company's stock on the "date of grant."  Under the terms of the Stock Option

26  Plan, the grant date was presumed to be the date that the administrator "completes the actions

27  necessary to grant" the options.

28

                                                      4                              SEC v. MARVELL, et al.
                                                                                         COMPLAINT

1    16.    Under Accounting Principles Board Opinion No. 25, "Accounting for Stock Issued to

2  Employees" ("APB 25") and the accounting rules in effect during Marvell's fiscal years 2001 through

3  2006, public companies were required to record an expense on their financial statements for the "in-

4  the-money" portion of any option grant. According to APB 25, that difference had to be recorded as a

5  compensation expense recognized over the vesting period of the option. Consequently, granting "in-

6  the-money" options to employees could have a significant impact on the expenses and income (or

7  loss) reported to the shareholders of a public company. APB 25 allowed companies, where the key

8  terms of an option grant were known, to grant employee stock options without recording any

9  compensation expense so long as the option exercise price was not below the stock's market price on

10  the date of the grant.

11    17.    Marvell publicly reported, in its annual reports on Form 10-K for fiscal years 2001

12  through 2006, that the Company accounted for its employee stock options in accordance with APB

13  25. During the relevant time period, Marvell represented that the Company generally granted options

14  "at-the-money," not "in-the-money." During the relevant time period, Marvell did not take a

15  compensation charge for the difference between the fair market value of the options on the date of the

16  grant to existing employees and new hires, and the exercise price at which they were granted.

17    **C.    Marvell Backdated Employee Option Grants.**

18    18.    In late 2000, Marvell's Board of Directors, which included Dai and her husband, CEO

19  and Chairman of the Board Sehat Sutardja, delegated its authority to grant stock options to a Stock

20  Option Committee and appointed Dai and Sutardja as the Committee's sole members. The Board's

21  authorizing resolution empowered Dai and Sutardja to act jointly as the administrator of Marvell's

22  Stock Option Plan approved by shareholders.

23    19.    In 2000, Dai attended meetings in which accounting for stock options was discussed.

24  The meetings put Dai and other Marvell executives on notice of the potential accounting implications

25  of options with exercise prices below the market price of the Company's common stock.

26    20.    As detailed below, the Stock Option Committee never met. Instead, between 2001 and

27  2004, Dai herself picked the grant dates for Marvell's option grants to both newly hired and existing

28

SEC v. MARVELL, et al.
COMPLAINT

1  employees. Dai used historical stock price charts to select dates with low stock prices, and then

2  signed Stock Option Committee minutes which falsely represented that the Committee had met on

3  those earlier dates.

4      21.    Periodically throughout the year, Dai asked personnel in Marvell's human resources

5  department for, and was provided with, a list of Marvell's historic stock prices dating back to the last

6  date a grant was made. She then picked a date on which Marvell's stock was trading at or near the

7  lowest price for that period. This date was then treated as the ostensible date on which the Stock

8  Option Committee had met and granted the options, even though no such Committee meetings ever

9  occurred.

10     22.    In order to process the grants, the purported Stock Option Committee meeting date

11 was forwarded to stock administration personnel, as well as senior executives in the legal and finance

12 departments. Marvell's general counsel would then prepare minutes of the purported Committee

13 meeting for Dai's signature. The minutes, no more than one and a half pages, often included detailed

14 information about the Committee meeting – stating that Committee members Dai and Sutardja were

15 personally present, that Sutardja (as Chairman) called the meeting to order, that the Committee

16 reviewed and discussed stock option grant recommendations, and that the Committee unanimously

17 approved the option grants. This information was wholly fictitious, as no such meetings took place,

18 and the dates of the supposed meetings were selected with hindsight in order to secure lower stock

19 option exercise prices. Between 2001 and mid-2004, Dai signed at least 30 sets of fraudulent Stock

20 Option Committee minutes documenting backdated option grants.

21     23.    As a result of the backdating and the use of false documentation, Marvell treated in-

22 the-money options as if they had been granted at-the-money. Marvell did not take a compensation

23 charge for the difference between the fair market value of the options on the date of the grant to

24 existing employees and new hires, and the exercise price at which they were granted.

25     24.    Marvell failed to detect or prevent Dai's backdating, despite red flags signaling

26 potential misconduct. For example, Company personnel frequently complained about long delays

27 between option grants, only to be informed that the Stock Option Committee had in fact met on an

28

6

SEC v. MARVELL, et al.
COMPLAINT

1  earlier date. Internal correspondence suggested that such delays were caused not by a time lag

2  between the date of the Stock Option Committee meeting and the time the grant information was

3  communicated to stock administration personnel, but rather by the practice of using historical stock

4  price information to select grant dates with low stock prices.

5          25.     In other instances, Marvell personnel learned that Stock Option Committee meetings

6  were "cancelled" after they had supposedly already happened and, on at least one occasion, minutes

7  had already been drafted. At least three such meetings were "cancelled" in 2001. In reality, new

8  dates were being selected for the grants in order to take advantage of declines in Marvell's stock

9  price.

10         26.     Concerns over Marvell's stock option granting process were raised as early as 2000,

11  when personnel discussed using the date of hire as the grant date for all new hires. Although briefly

12  followed, that proposal was soon dropped. Instead, Marvell allowed options to be priced on the date

13  of the purported Stock Option Committee meeting "to provide the Company with the greatest

14  flexibility to price grants" – a policy that ended up facilitating the backdating scheme. In 2002 and

15  again in 2003, Marvell's auditors also suggested that Marvell's stock option process be standardized

16  to be more systematic and objective, but these suggestions were not adopted by Marvell.

17         27.     Notwithstanding these indicia of possible wrongdoing, Marvell failed to take steps to

18  prevent misconduct in connection with the Company's stock option grants.

19         28.     Finally, in mid-2004, the Company revised its grant process and set the date of new

20  hire option grants on the first Friday of the month. As a result, Dai no longer picked grant dates with

21  the benefit of hindsight. During that period, however, Dai continued to sign false Stock Option

22  Committee meeting minutes reflecting meetings that never occurred. Even after Dai ceased

23  backdating options, there remained internal controls problems that resulted in the failure to record

24  expenses for options granted with exercise prices below market prices at the time of the grant.

25

26

27

28

SEC v. MARVELL, et al.
COMPLAINT

1

**D.    As A Result Of The Backdating, Marvell Publicly Reported False And
Misleading Financial Information.**

2

3    29.    Marvell is a public company. Accordingly, it filed with the Commission annual

4    reports on Form 10-K for the fiscal years ended January 27, 2001 (filed April 27, 2001), February 2,

5    2002 (filed May 1, 2002), February 1, 2003 (filed May 1, 2003), January 31, 2004 (filed April 13,

6    2004), January 29, 2005 (filed April 14, 2005), and January 28, 2006 (filed April 13, 2006) which

7    included financial statements that were audited by Marvell's independent accountants.

8    30.    Dai signed the Form 10-Ks for the fiscal years 2001 through 2005 as Executive Vice

9    President, secretary, and director. She signed the Form 10-K for the fiscal year 2006 as an officer and

10    director.

11    31.    In the notes to its audited financial statements, which were included in its annual

12    reports for fiscal years 2001 through 2006, Marvell affirmatively stated that the Company accounted

13    for its employee stock option plans in accordance with APB 25. Additionally, in proxy statements

14    provided to shareholders, Marvell stated that stock options were granted with exercise prices equal to

15    the fair market value on the date of the grant.

16    32.    In its financial statements accompanying its annual reports, Marvell failed to record

17    compensation expenses for the backdated, "in-the-money" option grants. Marvell materially

18    understated its expenses and overstated its net income in the financial statements included in its

19    annual reports by more than 10 percent cumulatively between fiscal year 2001 and 2006, and for each

20    fiscal year between 2003 and 2006.

21    33.    The financial misstatements were material. Marvell understated its compensation

22    expenses by a cumulative total of approximately $327 million between 2000 and 2006. It also

23    overstated its net income for this period by a cumulative total of approximately $362 million.

24    34.    The financial misstatements were material on an annual basis as well. For example, in

25    its 2004 fiscal year, Marvell reported to investors its first positive net income since becoming a public

26    company. However, had Marvell properly accounted for its stock option grants, Marvell would have

27    reported a net loss of $18.3 million. For fiscal year 2005, had the company properly accounted for its

28

SEC v. MARVELL, et al.
COMPLAINT

1  stock option grants, it would have reported annual net income of only $62.8 million, 56% less than its

2  reported net income of $141.7.  Similarly, the Company's fiscal year 2006 net income would have

3  been $199.5 million if it had properly expensed its backdated options, 40% less than its reported net

4  income of $331.4 million.

5          35.     In order to allow Marvell's independent accountants to review and audit the

6  Company's financial statements, Marvell provided them copies of the false Stock Option Committee

7  minutes.  Marvell confirmed the accuracy of those minutes in management representation letters to its

8  auditors.

9          36.     Marvell also filed with the Commission quarterly reports on Form 10-Q between

10  September 12, 2001 and June 8, 2006.  The quarterly reports also contained financial statements that

11  were materially false or misleading because Marvell failed to record compensation expenses

12  associated with "in-the-money" options.

13          37.     In addition, Marvell filed with the Commission current reports on Form 8-K between

14  April 5, 2001 and May 18, 2006, each of which announced the Company's financial results for the

15  prior quarter.  These current reports contained materially false and misleading financial information

16  because Marvell failed to record compensation expenses associated with undisclosed grants of "in-

17  the-money" stock options.

18          38.     Marvell's proxy statements (which were sent to shareholders and filed with the

19  Commission) also made materially false representations about Marvell's stock option grants.

20  Marvell's proxy statements asserted that the Company did not grant employee stock options at less

21  than fair market value on the date of the grant.  This was false; as described above, Marvell routinely

22  granted "in-the-money" options through backdating.  As corporate secretary, Dai signed the notices of

23  the annual shareholder meetings that were included with each proxy statement and thus solicited the

24  proxies.

25          39.     In reliance on the Stock Option Committee minutes, Marvell's proxy statements also

26  included the number of times that the Stock Option Committee met during the prior fiscal year.

27  Between December 2000 and January 2006, according to Marvell's proxy statements, the Committee

28

SEC v. MARVELL, et al.
COMPLAINT

1    met 53 times. Because the Stock Option Committee never met, the proxy statements provided

2    investors with false and misleading information about Marvell's stock option granting process.

3        40.    Marvell also sold securities pursuant to offering documents, including registration

4    statements on Forms S-3, which incorporated Marvell's false and misleading financial statements.

5    Marvell filed Forms S-3 in July 2003 and November 2005 to register shares issued in connection with

6    two acquisitions. In addition, Marvell filed 9 Forms S-8 between 2002 and 2006 to register shares

7    issued pursuant to its Employee Stock Purchase Plan and its Stock Option Plan, or in connection with

8    acquisitions. Dai signed the Forms S-3 and Forms S-8 as an officer and director of Marvell. The

9    forms incorporated by reference Marvell's false and misleading financial information that was

10   included in its Form 10-K filings.

11       41.    Dai knew or was reckless in not knowing that Marvell's statements in its public

12   disclosures were false and misleading.

13   **E.    Subsequent Events**

14       42.    In May 2006, in response to public reports about possible backdating at Marvell and

15   other public companies, Marvell's Board of Directors appointed a Special Committee, comprised of

16   one independent director, to conduct an investigation into the Company's historical stock option

17   granting practices. In October 2006, Marvell announced that the Special Committee had discovered

18   evidence of backdating and that the Company intended to restate its historical financial statements.

19       43.    Although Dai and Sutardja were identified in Company documents as the sole

20   members of Marvell's Stock Option Committee (and were the Company's two most senior

21   executives), the Special Committee did not interview Dai and Sutardja until February 2007,

22   approximately 10 months after it had been asked to investigate backdating at Marvell.

23       44.    The Special Committee concluded its investigation in April 2007 and reported its

24   findings to Marvell's Board of Directors. It concluded that the Stock Option Committee did not meet

25   and that minutes reflecting Stock Option Committee meetings were false. It found that new hire and

26   secondary grants were backdated. In addition, as the Company later disclosed, the Special Committee

27   found that Marvell's employees involved in the stock option process did not feel able to provide Dai

28

10

1   or Sutardja with frank advice, and that certain Marvell executives had failed to advise Dai about her

2   responsibilities and duties regarding stock options.

3         45.     The Special Committee made recommendations to Marvell's Board of Directors.

4   Among other things, the Special Committee recommended that Marvell accept the resignation of

5   certain executives (including its Chief Financial Officer) and reform its stock option process. The

6   Special Committee recommended that Marvell seek to find a new Chairman of the Board to replace

7   Sutardja. As of April 2008, approximately one year later, Sutardja remains Marvell's Chairman.

8         46.     The Special Committee also recommended that Dai have no continuing role with the

9   Company. The Board determined, however, that while Dai would step down from the Board and

10   from her position as Chief Operating Officer, Dai would continue to work for Marvell as Director of

11   Strategic Marketing and Business Development, with no authority over internal controls or financial

12   matters. Pantas Sutardja, Dai's brother-in-law, was named as acting COO to replace Dai, and, as of

13   April 2008, remained in that position.

14
### FIRST CLAIM FOR RELIEF
*(Violations of Exchange Act Section 10(b) and Rule 10b-5 Thereunder by Defendants)*

15

16         47.     The Commission realleges and incorporates by reference paragraphs 1 through 46.

17         48.     By engaging in the conduct described above, Marvell and Dai, directly or indirectly, in

18   connection with the purchase or sale of securities, by the use of means or instrumentalities of

19   interstate commerce, or the mails, with scienter:

20         a.   Employed devices, schemes, or artifices to defraud;

21         b.   Made untrue statements of material facts or omitted to state material facts

22             necessary in order to make the statements made, in the light of the circumstances

23             under which they were made, not misleading; and

24         c.   Engaged in acts, practices, or courses of business which operated or would operate

25             as a fraud or deceit upon other persons, including purchasers and sellers of

26             securities.

27

28

11

49.    By reason of the foregoing, Marvell and Dai have violated and, unless restrained and enjoined, will continue to violate Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. § 240.10b-5].

## SECOND CLAIM FOR RELIEF
*(Violations of Securities Act Section 17(a)(1) by Defendants)*

50.    The Commission realleges and incorporates by reference Paragraphs 1 through 46.

51.    By engaging in the conduct described above, Marvell and Dai, directly or indirectly, in the offer or sale of securities, by use of the means or instruments of transportation or communication in interstate commerce or by use of the mails, with scienter, employed devices, schemes, or artifices to defraud.

52.    By reason of the foregoing, Marvell and Dai have violated and, unless restrained and enjoined, will continue to violate Section 17(a)(1) of the Securities Act [15 U.S.C. § 77q(a)(1)].

## THIRD CLAIM FOR RELIEF
*(Violations of Securities Act Section 17(a)(2) by Marvell)*

53.    The Commission realleges and incorporates by reference Paragraphs 1 through 46.

54.    By engaging in the conduct described above, Marvell, directly or indirectly, in the offer or sale of securities, by use of the means or instruments of transportation or communication in interstate commerce or by use of the mails obtained money or property by means of untrue statements of material fact or by omitting to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

55.    By reason of the foregoing, Marvell has violated and, unless restrained and enjoined, will continue to violate Section 17(a)(2) of the Securities Act [15 U.S.C. § 77q(a)(2)].

## FOURTH CLAIM FOR RELIEF
*(Violations of Securities Act Section 17(a)(3) by Defendants)*

56.    The Commission realleges and incorporates by reference Paragraphs 1 through 46.

57.    By engaging in the conduct described above, Marvell and Dai, directly or indirectly, in the offer or sale of securities, by use of the means or instruments of transportation or communication

SEC v. MARVELL, et al.
COMPLAINT

1    in interstate commerce or by use of the mails, engaged in transactions, practices, or courses of

2    business which operated or would operate as a fraud or deceit upon the purchasers.

3        58.    By reason of the foregoing, Marvell and Dai have violated and, unless restrained and

4    enjoined, will continue to violate Section 17(a)(3) of the Securities Act [15 U.S.C. § 77q(a)(3)].

5                              **FIFTH CLAIM FOR RELIEF**
     *(False Periodic Reports – Violations of and Aiding and Abetting Violations of Exchange Act*
6    *Section 13(a) and Rules 12b-20, 13a-1, 13a-11,and 13a-13 Thereunder by Defendants)*

7

8        59.    The Commission realleges and incorporates by reference Paragraphs 1 through 46.

9        60.    Based on the conduct alleged above, Marvell violated Section 13(a) of the Exchange

10   Act [15 U.S.C. § 78m(a)] and Rules 12b-20, 13a-1, 13a-11, and 13a-13 thereunder [17 C.F.R.

11   §§ 240.12b-20, 240.13a-1, 240.13a-11, and 240.13a-13], which obligate issuers of securities

12   registered pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78*l*] to file with the Commission

13   accurate periodic reports, including annual, current, and quarterly reports.

14       61.    By engaging in the acts and conduct alleged above, Dai knowingly provided

15   substantial assistance to Marvell's filing of materially false and misleading reports with the

16   Commission.

17       62.    By reason of the foregoing, Dai aided and abetted Marvell's violations of

18   Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Rules 12b-20, 13a-1, 13a-11, and 13a-

19   13 [17 C.F.R. §§ 240.12b-20, 240.13a-1, 240.13a-11, and 240.13a-13] thereunder.  Unless restrained

20   and enjoined, Dai will continue to aid and abet such violations.

21                              **SIXTH CLAIM FOR RELIEF**
     *(False Books and Records – Violations of and Aiding and Abetting Violations of Exchange Act*
22   *Section 13(b)(2)(A) by Defendants)*

23       63.    The Commission realleges and incorporates by reference Paragraphs 1 through 46.

24       64.    Based on the conduct alleged above, Marvell violated Section 13(b)(2)(A) of the

25   Exchange Act [15 U.S.C. § 78m(b)(2)(A)], which obligates issuers of securities registered pursuant to

26   Section 12 of the Exchange Act [15 U.S.C. § 78*l*] to make and keep books, records and accounts

27

28

SEC v. MARVELL, et al.
COMPLAINT

1  which, in reasonable detail, accurately and fairly reflect the transactions and dispositions of the assets

2  of the issuer.

3      65.    By engaging in the acts and conduct alleged above, Dai knowingly provided

4  substantial assistance to Marvell's failure to make and keep books, records, and accounts which, in

5  reasonable detail, accurately and fairly reflect its transactions and dispositions of its assets.

6      66.    By reason of the foregoing, Dai aided and abetted violations by Marvell of

7  Section 13(b)(2)(A) of the Exchange Act [15 U.S.C. § 78m(b)(2)(A)]. Unless restrained and

8  enjoined, Dai will continue to aid and abet such violations.

9                    **SEVENTH CLAIM FOR RELIEF**
                *(Inadequate Internal Accounting Controls – Violations of Exchange Act*
10                  *Section 13(b)(2)(B) by Marvell)*

11     67.    The Commission realleges and incorporates by reference Paragraphs 1 through 46.

12     68.    Based on the conduct above, Marvell violated Section 13(b)(2)(B) of the Exchange

13  Act [15 U.S.C. § 78m(b)(2)(B)], which obligates issuers of securities registered pursuant to

14  Section 12 of the Exchange Act [15 U.S.C. § 78l] to devise and maintain a sufficient system of

15  internal accounting controls. Unless restrained and enjoined, Marvell will continue to violate

16  Section 13(b)(2)(B) of the Exchange Act [15 U.S.C. § 78m(b)(2)(B)].

17                    **EIGHTH CLAIM FOR RELIEF**
                *(Falsifying Books and Records or Circumventing Internal Accounting Controls—*
18                  *Violations of Exchange Act Section 13(b)(5) by Dai)*

19     69.    The Commission realleges and incorporates by reference Paragraphs 1 through 46.

20     70.    By the conduct alleged above, Dai violated Section 13(b)(5) of the Exchange Act

21  [15 U.S.C. § 78m(b)(5)] which prohibits anyone from knowingly circumventing a system of internal

22  accounting, or knowingly falsifying certain books, records, and accounts.

23     71.    By reason of the foregoing, Dai violated and, unless restrained and enjoined, will

24  continue to violate Section 13(b)(5) of the Exchange Act [15 U.S.C. § 78m(b)(5)].

25                    **NINTH CLAIM FOR RELIEF**
                *(Falsifying Books and Records—Violations of Exchange Act Rule 13b2-1 by Dai)*
26

27     72.    The Commission realleges and incorporates by reference Paragraphs 1 through 46.

28

SEC v. MARVELL, et al.
COMPLAINT

73.    By engaging in the conduct described above, Dai falsified or caused to be falsified

Marvell's books, records, and accounts in violation of Rule 13b2-1 under the Exchange Act

[17 C.F.R. § 240.13b2-1].

74.    By reason of the foregoing, Dai has violated and, unless restrained and enjoined, will

continue to violate Rule 13b2-1 under the Exchange Act [17 C.F.R. § 240.13b2-1].

## TENTH CLAIM FOR RELIEF
*(False Proxy Statements—Violations of Exchange Act
Section 14(a) and Rule 14a-9 Thereunder by Defendants)*

75.    The Commission realleges and incorporates by this reference Paragraphs 1 through 46.

76.    Based on the conduct alleged above, Marvell and Dai violated Section 14(a) of the

Exchange Act [15 U.S.C. § 78n(a)] and Rule 14a-9 thereunder [17 C.F.R. § 240.14a-9], which

prohibits solicitations by means of a proxy statement, form of proxy, notice of meeting, or other

communication, written or oral, that contains a statement which, at the time and in the light of the

circumstances under which it was made, was false or misleading with respect to any material fact, or

which omits to state any material fact necessary in order to make the statements therein not false or

misleading or necessary to correct any statement in any earlier communication with respect to the

solicitation of a proxy for the same meeting or subject matter which had become false or misleading.

77.    By reason of the foregoing, Marvell and Dai violated, and unless restrained and

enjoined, will continue to violate Section 14(a) of the Exchange Act [15 U.S.C. § 78n(a)] and

Rule 14a-9 [17 C.F.R. § 240.14a-9] thereunder.

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that this Court:

I.

Permanently enjoin Marvell from directly or indirectly violating Section 17(a) of the

Securities Act [15 U.S.C. § 77q(a) and Sections 10(b), 13(a), 13(b)(2)(A), 13(b)(2)(B) and 14(a) of

the Exchange Act [15 U.S.C. §§ 78j(b), 78m(a), 78m(b)(2)(A), 78m(b)(2)(B), and 78n(a)] and

Rules 10b-5, 12b-20, 13a-1, 13a-11, 13a-13, and 14a-9 [17 C.F.R. §§ 240.10b-5, 240.12b-20,

240.13a-1, 240.13a-11, 240.13a-13 and 240.14a-9] thereunder.

15

SEC v. MARVELL, et al.
COMPLAINT

II.

Permanently enjoin Dai from directly or indirectly violating Section 17(a)(1) and (3) of the Securities Act [15 U.S.C. § 77q(a)(1) and (3)] and Sections 10(b), 13(b)(5) and 14(a) of the Exchange Act [15 U.S.C. §§ 78j(b), 78m(b)(5), and 78n(a)], and Rules 10b-5, 13b2-1 and 14a-9 thereunder [17 C.F.R. §§ 240.10b-5, 13b2-1, and 240.14a-9], and from aiding and abetting violations of Sections 13(a) and 13(b)(2)(A) of the Exchange Act [15 U.S.C. §§ 78m(a) and 78m(b)(2)(A)] and Rules 12b-20, 13a-1, 13a-11, and 13a-13 [17 C.F.R. §§ 240.12b-20, 240.13a-1, 240.13a-11, and 240.13a-13] thereunder.

III.

Order Marvell to pay a civil penalty pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)].

IV.

Order Dai to pay a civil penalty pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)].

V.

Prohibit Dai, pursuant to Section 21(d)(2) of the Exchange Act [15 U.S.C. § 78u(d)(2)], from serving as an officer or director of any entity having a class of securities registered with the Commission pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78l] or that is required to file reports pursuant to Section 15(d) of the Exchange Act [15 U.S.C. § 78o(d)].

VI.

Retain jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court.

SEC v. MARVELL, et al.
COMPLAINT

VII.

Grant such other and further relief as this Court may determine to be just and necessary.

DATED: May 8, 2008                        Respectfully Submitted,

Robert L. Tashjian
Attorney for Plaintiff
SECURITIES AND EXCHANGE COMMISSION

SEC v. MARVELL, et al.
COMPLAINT

ORIGINAL

JS 44 (Rev. 12/07) (cand rev 1-16-08)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON PAGE TWO OF THE FORM.)

## I. (a) PLAINTIFFS

SECURITIES AND EXCHANGE COMMISSION

## DEFENDANTS

MARVELL TECHNOLOGY GROUP, LTD. AND WEILI DAI

**(b)** County of Residence of First Listed Plaintiff
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant    SANTA CLARA
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Securities and Exchange Commission    (415) 705-2500
44 Montgomery Street, Suite 2600, San Francisco, CA 94104

Attorneys (If Known)

SEE ATTACHMENT

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

[X] 1  U.S. Government
       Plaintiff

[ ] 2  U.S. Government
       Defendant

[ ] 3  Federal Question
       (U.S. Government Not a Party)

[ ] 4  Diversity
       (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                    and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 610 Agriculture | [ ] 422 Appeal 28 USC 158 | [ ] 400 State Reapportionment |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 362 Personal Injury— | [ ] 620 Other Food & Drug | [ ] 423 Withdrawal | [ ] 410 Antitrust |
| [ ] 130 Miller Act | [ ] 315 Airplane Product | Med. Malpractice | [ ] 625 Drug Related Seizure | 28 USC 157 | [ ] 430 Banks and Banking |
| [ ] 140 Negotiable Instrument | Liability | [ ] 365 Personal Injury — | of Property 21 USC 881 | | [ ] 450 Commerce |
| [ ] 150 Recovery of Overpayment | [ ] 320 Assault, Libel & | Product Liability | [ ] 630 Liquor Laws | **PROPERTY RIGHTS** | [ ] 460 Deportation |
| & Enforcement of Judgment | Slander | [ ] 368 Asbestos Personal | [ ] 640 R.R. & Truck | [ ] 820 Copyrights | [ ] 470 Racketeer Influenced and |
| [ ] 151 Medicare Act | [ ] 330 Federal Employers' | Injury Product | [ ] 650 Airline Regs. | [ ] 830 Patent | Corrupt Organizations |
| [ ] 152 Recovery of Defaulted | Liability | Liability | [ ] 660 Occupational | [ ] 840 Trademark | [ ] 480 Consumer Credit |
| Student Loans | [ ] 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | [ ] 490 Cable/Sat TV |
| (Excl. Veterans) | [ ] 345 Marine Product | [ ] 370 Other Fraud | [ ] 690 Other | | [ ] 810 Selective Service |
| [ ] 153 Recovery of Overpayment | Liability | [ ] 371 Truth in Lending | | | [X] 850 Securities/Commodities/ |
| of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 380 Other Personal | **LABOR** | **SOCIAL SECURITY** | Exchange |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle | Property Damage | [ ] 710 Fair Labor Standards | [ ] 861 HIA (1395ff) | [ ] 875 Customer Challenge |
| [ ] 190 Other Contract | Product Liability | [ ] 385 Property Damage | Act | [ ] 862 Black Lung (923) | 12 USC 3410 |
| [ ] 195 Contract Product Liability | [ ] 360 Other Personal Injury | Product Liability | [ ] 720 Labor/Mgmt. Relations | [ ] 863 DIWC/DIWW (405(g)) | [ ] 890 Other Statutory Actions |
| [ ] 196 Franchise | | | [ ] 730 Labor/Mgmt.Reporting | [ ] 864 SSID Title XVI | [ ] 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | & Disclosure Act | [ ] 865 RSI (405(g)) | [ ] 892 Economic Stabilization Act |
| | | | [ ] 740 Railway Labor Act | | [ ] 893 Environmental Matters |
| [ ] 210 Land Condemnation | [ ] 441 Voting | [ ] 510 Motions to Vacate | [ ] 790 Other Labor Litigation | | [ ] 894 Energy Allocation Act |
| [ ] 220 Foreclosure | [ ] 442 Employment | Sentence | [ ] 791 Empl. Ret. Inc. | **FEDERAL TAX SUITS** | [ ] 895 Freedom of Information |
| [ ] 230 Rent Lease & Ejectment | [ ] 443 Housing/ | **Habeas Corpus:** | Security Act | | Act |
| [ ] 240 Torts to Land | Accommodations | [ ] 530 General | | [ ] 870 Taxes (U.S. Plaintiff | [ ] 900 Appeal of Fee |
| [ ] 245 Tort Product Liability | [ ] 444 Welfare | [ ] 535 Death Penalty | | or Defendant) | Determination |
| [ ] 290 All Other Real Property | [ ] 445 Amer. w/Disabilities - | [ ] 540 Mandamus & Other | **IMMIGRATION** | [ ] 871 IRS—Third Party | Under Equal Access |
| | Employment | [ ] 550 Civil Rights | [ ] 462 Naturalization Application | 26 USC 7609 | to Justice |
| | [ ] 446 Amer. w/Disabilities – | [ ] 555 Prison Condition | [ ] 463 Habeas Corpus – | | [ ] 950 Constitutionality of |
| | Other | | Alien Detainee | | State Statutes |
| | [ ] 440 Other Civil Rights | | [ ] 465 Other Immigration | | |
| | | | Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

[X] 1 Original        [ ] 2 Removed from    [ ] 3 Remanded from    [ ] 4 Reinstated or    [ ] 5 another district    [ ] 6 Multidistrict    [ ] 7 Judge from
      Proceeding           State Court           Appellate Court        Reopened             (specify)               Litigation            Magistrate
                                                                                                                                             Judgment

Transferred from

Appeal to District

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing **(Do not cite jurisdictional statutes unless diversity):**
15 USC §§ 77q(a), 78j(b), 78m, 78n; 17 CFR §§ 240.10b-5, 240.12b-20, 240.13a-1, 240.13a-11, 240.13a-13, 240.14a-9

Brief description of cause:
Securities Fraud

## VII. REQUESTED IN COMPLAINT:

[ ] CHECK IF THIS IS A CLASS ACTION
UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:    [ ] Yes [X] No

## VIII. RELATED CASE(S) IF ANY

**PLEASE REFER TO CIVIL L.R. 3-12 CONCERNING REQUIREMENT TO FILE
"NOTICE OF RELATED CASE".**

## IX. DIVISIONAL ASSIGNMENT (CIVIL L.R. 3-2)
(PLACE AND "X" IN ONE BOX ONLY)

[ ] SAN FRANCISCO/OAKLAND        [X] SAN JOSE

DATE  May 8, 2008

SIGNATURE OF ATTORNEY OF RECORD

ATTACHMENT TO CIVIL COVER SHEET – SECURITIES AND EXCHANGE COMMISSION v.
MARVELL TECHNOLOGY GROUP, LTD. AND WEILI DAI

Attorneys for Defendants:


Boris Feldman, Esq.
Steven M. Schatz, Esq.
Wilson Sonsini Goodrich & Rosati PC
650 Page Mill Road
Palo Alto, CA  94304
(650) 493-9300
Counsel for Marvel Technology Group, Ltd.,


Theodore V. Wells, Jr., Esq.
Michele Hirshman, Esq.
Charles E. Davidow, Esq.
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, NY  10019
(212) 373-3000
Counsel for Weili Dai